**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**EDWIN ROMERO, ET AL.,**

                    **Plaintiffs,**            **19-cv-0694 (JGK)**

        **- against -**                **OPINION AND ORDER**

**METROPOLITAN TRANSPORTATION**
**AUTHORITY, ET AL.,**

                    **Defendants.**
────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

        The plaintiffs are current employees of subsidiaries or affiliated entities of the Metropolitan Transportation Authority ("MTA"): the MTA Headquarters ("MTAHQ") and the Manhattan and Bronx Surface Transit Operating Authority ("MABSTOA"). The plaintiffs bring this action against the defendants, the MTA, MTAHQ, and MABSTOA, alleging claims for nonpayment of overtime wages under (1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., (2) the New York State Civil Service Law ("NYCSL") Section 134, and (3) Title 9, Section 135 of the New York Codes, Rules and Regulations ("NYCRR"). They also allege violations of the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the New York State Constitution.

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing

suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The Court accepts the following factual allegations for the purposes of this motion.

The plaintiffs are current employees of two entities related to the MTA: MABSTOA and MTAHQ. Second Amended Complaint ("SAC") ¶ 1. They work in various positions, including Computer Aide, Computer Associate, Computer Specialist, Telecom Associate, Staff Analyst, Staff Analyst Trainee, Associate Staff Analyst, and Assistant Transit Management Analyst. Id. at ¶ 213. MABSTOA is a New York State public authority created in 1962 to take over the bus services of two bankrupt private companies in the Bronx and Manhattan and to employ bus operators and mechanics.[1] Id. at ¶ 200. In the last two decades, MABSTOA has also hired employees in computer-related and analyst positions. Id. MTAHQ is a public benefit corporation created to handle various administrative functions of the MTA. Id. at ¶ 201. MTAHQ is either a wholly owned subsidiary of the MTA, or is a name by which the MTA does business created to handle various

---

[1] MABSTOA is a subsidiary corporation of the New York City Transit Authority. See N.Y. Pub. Auth. Law § 1203-a.

administrative functions of the MTA. Id.[2] The MTA is a New York State Authority created to coordinate transportation needs throughout New York State. Id. at ¶ 202.

Over the last six years, the plaintiffs have been required to work, during various weeks, in excess of 40 hours per week, either by working more than eight hours a day during a five-day week, during a weekend, or on a day scheduled as an off day. Id. at ¶ 208. When the plaintiffs have been scheduled to work more than 40 hours, they have been paid straight time, instead of at a rate of 1.5 times their regular pay. Id. at ¶ 209. The plaintiffs allege that they cannot, without access to the defendants' time records, determine which precise weeks they worked overtime without overtime pay and request leave of the Court to amend the SAC to provide specifics once such records become available. Id. at ¶ 210. The plaintiffs also admit that some plaintiffs began to receive overtime pay in 2017 or 2018 as a result of collective bargaining carried out by their union. Id. at ¶ 216.

The plaintiffs allege that the New York City Transit Authority ("NYCTA") is another subsidiary agency of the MTA. Id. at ¶ 211.[3] NYCTA employees have similar job titles and do

---

[2] At oral argument, the parties agreed that for the purposes of this motion, the MTA and MTAHQ were the same entity.

[3] The NYCTA is an affiliate, not a subsidiary of the MTA. It is a "legally separate public benefit corporation affiliated with the MTA." New York Urban League, Inc. v. State of N.Y., 71 F.3d 1031, 1033 (2d Cir. 1995) (per

substantially the same work as MABSTOA employees, but have different minimum and maximum pay rates for the jobs. Id. at ¶ 212. NYCTA positions have salary ranges that are approximately 5% higher than similar MABSTOA positions. Id. at ¶ 213. In the last 24 months, new employees have been hired as MTAHQ employees, given the responsibilities of NYCTA and MABSTOA employees, paid at the MABSTOA rate, and denied the right to participate in any pension plan. Id. at ¶ 212.

The plaintiffs allege that over the last six years, the defendants failed to pay overtime pay for work in excess of 40 hours per week, as required by the FLSA, 29 U.S.C. § 216(b), NYCSL Section 134, and 9 NYCRR Section 135.1.[4] They also allege that over the last six years, the defendants created an unequal compensation scheme in which the plaintiffs, who worked for MABSTOA or MTAHQ, received a lesser rate of pay than NYCTA employees, even though employees in the three agencies perform substantially the same work. They claim that the unequal compensation scheme serves no legitimate governmental purpose and violates the Equal Protection Clauses of the Fourteenth

---

curiam); see also Hargett v. Metro. Transit Auth., 552 F. Supp. 2d 393, 406 (S.D.N.Y. 2008).

[4] Some plaintiffs join this action only for equal protection claims. These plaintiffs do not seek compensation for unpaid overtime because they joined a separate action for overtime compensation, Frederick Brack, et al. v. MTA New York City Transit, No. 18-CV-846 (E.D.N.Y.). SAC at ¶¶ 7, 14, 16, 17, 26, 31, 33, 34, 42, 44, 54, 63, 101, 117, 122, 130, 181, 203.

Amendment of the United States Constitution and the New York
State Constitution.

The defendants have moved to dismiss the plaintiffs' claims
under Federal Rule of Civil Procedure 12(b)(6) for failure to
state a claim upon which relief can be granted.

### III.

The first count of the SAC alleges violations of the
plaintiffs' overtime rights under the FLSA. The FLSA generally
requires an employer to pay an employee "at a rate not less than
one and one-half times the regular rate at which he is employed"
for hours worked in excess of 40 per week. 29 U.S.C. §
207(a)(1). "[T]o state a plausible FLSA overtime claim, a
plaintiff must sufficiently allege 40 hours of work in a given
workweek as well as some uncompensated time in excess of the 40
hours." Lundy v. Catholic Health Sys. of Long Island Inc., 711
F.3d 106, 114 (2d Cir. 2013). "Plaintiffs must provide
sufficient detail about the length and frequency of their unpaid
work to support a reasonable inference that they worked more
than forty hours in a given week." Nakahata v. N.Y. Presbyterian
Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013). The
Court of Appeals for the Second Circuit has held that plaintiffs
are not required to "plead their hours with mathematical
precision," but are required to draw on their memory and
experience to provide complaints with sufficiently developed

factual allegations. See Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 90 (2d Cir. 2013). The Court of Appeals found that the allegations in Dejesus, that for "some or all weeks" the plaintiff worked more than "forty hours" a week without being paid "1.5" times her rate of compensation, were "devoid of any numbers to consider beyond those plucked from the statute" and were insufficient to state a claim. Id. at 89-90.

In this case, the plaintiffs' allegations fall short of stating a claim for FLSA overtime violations. The SAC does not show that any plaintiff was required to work 40 hours per week as well as uncompensated time in excess of 40 hours. The plaintiffs have not provided information about work schedules of or actual hours worked by any employee, which might have allowed the Court to conclude that a plaintiff was eligible to receive overtime pay. See Almanzar v. C & I Assocs., Inc., 175 F. Supp. 3d 270, 274 (S.D.N.Y. 2016) (finding that allegations of a work schedule beginning at 7:30 a.m. or 8:00 a.m. and ending by 5:00 p.m., six days a week were sufficient to satisfy the Lundy standard); Djurdjevich v. Flat Rate Movers, Ltd., No. 17-CV-261, 2018 WL 1478132, at *5 (S.D.N.Y. Mar. 23, 2018) (finding the plaintiff's allegations that he worked from 6:30 a.m. to 11:30 p.m., six days a week were sufficient to plead an FLSA overtime claim). Contrary to the plaintiffs' assertion in their opposition, paragraph 208 of the SAC does not establish that the

plaintiffs were required to work at least 40 hours per week.[5] The complaint's general allegations that the plaintiffs worked more than eight hours a day in a five-day week or worked during a weekend or on a scheduled off day neither explain the number of weeks that overtime pay was miscalculated nor specify any week in which overtime pay was unpaid. The allegations are insufficient because they simply repeat the language of the statute and are too general to put the defendants on notice of the alleged violations. See Dejesus, 726 F.3d at 89. Therefore, the plaintiffs' FLSA claims are **dismissed without prejudice.**

## IV.

The second count of the SAC alleges that the defendants violated NYCSL Section 134 and 9 NYCRR Section 135.1, by failing to pay overtime at a rate of one and one-half times the hourly rate of an employee's regular rate of pay.

NYCSL Section 134 applies to "all state officers and employees," with other exclusions not relevant to this case.

---

[5] The plaintiffs attached two paystubs of one of the plaintiffs, Denise Wellington, to their opposition, to show that at least one plaintiff worked over 40 hours a week and was not properly compensated. However, "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) (collecting cases). The Court will thus not consider the two paystubs in reaching its decision. In any event, the paystubs that the plaintiffs submitted in support of overtime work actually reflect that the plaintiffs had a regular workweek of 35 hours. Furthermore, the fact that at least one plaintiff has paystubs in her possession defeats the plaintiffs' assertion that discovery is necessary for the plaintiffs to determine which weeks they worked overtime without overtime pay.

N.Y. Civ. Serv. Law § 134(1). The New York Court of Appeals has "consistently recognized public authorities as legal entities separate from the State, enjoying an existence separate and apart from the State, its agencies and political subdivisions." Schulz v. State, 639 N.E.2d 1140, 1147 n.4 (N.Y. 1994). The fact that a public benefit corporation was created by the State and "engages in operations which are fundamentally governmental in nature does not inflexibly mandate a conclusion that it is the State or one of its agencies." John Grace & Co., Inc. v. State Univ. Constr. Fund, 375 N.E.2d 377, 378 (N.Y. 1978). There is no controlling New York State judicial decision on whether the employees of the MTA and MABSTOA are considered to be employees of the State for purposes of Section 134 of the NYCSL. The New York Court of Appeals has held that a "particularized inquiry is necessary to determine whether—for the specific purpose at issue—the public benefit corporation should be treated like the State." Clark-Fitzpatrick, Inc. v. Long Island R. Co., 516 N.E.2d 190, 192 (N.Y. 1987); see Grace & Co., 375 N.E.2d at 379 (requiring particularized inquiry into the nature of the instrumentality and the statute claimed to be applicable).[6]

---

[6] The New York Court of Appeals has held that a public benefit corporation is treated like the State for purposes of immunity from punitive damages, but not for purposes of contract bidding requirements under the State Finance Law, sovereign immunity, statutes providing for equitable relief to certain public contractors, or a provision of the Penal Law punishing the submission of false instruments to the State. See In re World Trade Ctr. Lower Manhattan Disaster Site Litig., 89 N.E.3d 1227, 1235 (N.Y. 2017) (citations omitted).

For the purposes of a different civil service statute, NYCSL Section 115, courts have found that the MTA should not be treated like the State. NYCSL Section 115 expresses a policy of the State to provide equal pay for equal work and applies to those in "service of the <u>state</u> of New York and all its political subdivisions." N.Y. Civ. Serv. Law § 115 (emphasis added). A New York State Supreme Court rejected the proposition that the MTA was bound by Section 115, noting that "[b]ecause MTA and its subsidiaries are a public authority and not a state agency, MTA [subsidiary] employees are not civil service employees, who comprise only state employees." <u>Clark v. Metro. Transp. Auth.</u>, 999 N.Y.S.2d 309, 317 (Sup. Ct. 2013) (citations omitted); <u>see also</u> <u>MTA Bus Non-Union Employees Rank & File Comm. ex rel. Simone v. Metro. Transp. Auth.</u>, 899 F. Supp. 2d 256, 267 (S.D.N.Y. 2012) (finding that MTA subsidiary's employees were not part of the civil service of the State of New York and thus, Section 115 did not apply to them); <u>Rozenfeld v. MTA Bus Co.</u>, No. 13-CV-4847, 2015 WL 1174768, at *5 (S.D.N.Y. Mar. 16, 2015).

In determining whether MABSTOA falls under the scope of Section 6 of Article V of the New York State Constitution, the New York Court of Appeals stated that because MABSTOA operates bus lines formerly owned by two private companies, "[t]he work performed by [MABSTOA] is, thus, more within the conventional duties of employees of private companies than it is of employees

of the State or one of its civil divisions." <u>Collins v.</u>
<u>Manhattan & Bronx Surface Transit Operating Auth. (MABSTOA)</u>, 62
N.Y.2d 361, 372 (N.Y. 1984).

The employees of MABSTOA and MTAHQ are also not governed by
the Civil Service Law. While Section 1210(2) of the Public
Authorities Law specifically provides that the New York State
Civil Service Law will govern NYCTA employees, the Public
Authorities Law "does not include a comparable provision for MTA
employees. Instead, Public Authorities Law § 1265(8)
specifically empowers MTA to 'appoint such officers and
employees as it may require for the performance of its duties,
and to fix and determine their qualifications, duties, and
compensation.'" <u>Clark</u>, 999 N.Y.S.2d at 317 (citations omitted).
In addition, while MABSTOA is a subsidiary corporation of the
NYCTA, <u>see</u> N.Y. Pub. Auth. Law § 1203-a(2), and the NYCTA is
subject to the Civil Service Law, the status of MABSTOA's
employees is governed exclusively by New York Public Authorities
Law Section 1203-a. <u>See</u> N.Y. Pub. Auth. Law § 1203-a(1). Section
1203-a(3)(b) specifically provides that officers and employees
of MABSTOA "shall not become, for any purpose, employees of the
city or of the transit authority and <u>shall not acquire civil</u>
<u>service status</u> or become members of the New York city employees'
retirement system." <u>Id.</u> (emphasis added). Furthermore, courts
have held that MABSTOA is "clearly independent of the State and

of New York City, for it appoints its own officers and employees, who are neither employees of the city nor members of the city employees' retirement system, and whose work is in no way controlled by the city." Collins, 62 N.Y.2d at 372 (citation omitted). Thus, in related contexts, courts have drawn distinctions between the MTA and MABSTOA on the one hand and the State on the other hand.

Regarding the nature of the statute, NYCSL Section 134 specifically states that it applies to "all state officers and employees," with other exclusions not relevant to this case. N.Y. Civ. Serv. Law § 134. NYCSL Section 115 similarly refers only to those in the service of "the state of New York and all its political subdivisions." N.Y. Civ. Serv. Law § 115. Further, a district court in this Circuit has found that Section 134 was not even applicable to county or municipal employees. See Lukaszewski v. Cty. of Ulster, No. 08-CV-483, 2009 WL 1794766 at n. 6 (N.D.N.Y. June 23, 2009).

The plaintiffs do not dispute the defendants' analysis regarding the nature of the MTA and MABSTOA or the nature of the statute. Instead, they argue that the conclusions courts have reached in analyzing NYCSL Section 115 are factually inapposite. They contend that Section 134 should be applicable to MTA and MABSTOA employees because other provisions of the Civil Service Law, such as Section 210 (the "Taylor Law"), which prohibits

strikes by "public employees," are applicable to MTA and MABSTOA employees. N.Y. Civ. Serv. Law § 210. However, New York Civil Service Law Section 201(7)(a) defines "public employee" to include any person in the service of a "public employer" with various exceptions and Section 201(6)(a)(v) defines "public employer" to include a public authority and public benefit corporation. Thus, unlike Section 134's use of the term "state officers and employees," the Taylor Law's application to "public employees" is broader and includes the MTA and MABSTOA.

Because the nature of the MTA and MABSTOA is distinct from the State and there is no evidence that Section 134 was enacted with the purpose of regulating compensation for employees of public benefit corporations, Section 134 of the NYCSL does not apply to the MTA and MABSTOA. Accordingly, the plaintiffs' claims under the NY Civil Service Law are **dismissed with prejudice.**

The defendants also seek to dismiss the plaintiffs' claims under the NYCRR. Under NYCSL Section 134(4), the Director of the Budget is authorized to promulgate rules and regulations to carry into effect the provisions of NYCSL Section 134; 9 NYCRR 135 is an example of such a regulation. However, because a regulation can have no greater reach than the statute that it seeks to implement, and because the statute does not apply to

13

the defendants, the plaintiffs' NYCRR claims are also **dismissed with prejudice**.[7]

## V.

The defendants argue that counts three and four of the SAC, which allege violations of the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the New York State Constitution, are barred by the Supreme Court's decision in Engquist v. Oregon Dep't of Agr., 553 U.S. 591 (2008).[8] Engquist held that the "class-of-one" theory of equal protection, which "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review," does not apply in the public employment context. 553 U.S. at 605-07; see also Conyers v. Rossides, 558 F.3d 137, 151-52 (2d Cir. 2009). However, Engquist made clear that the Equal Protection Clause continues to apply to public employers who treat classes of employees irrationally. "[T]he Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of

---

[7] Because the plaintiffs have failed to state claims for a violation of NYCSL Section 134 and 9 NYCRR Section 135.1, it is unnecessary to reach the defendants' argument that the claim is barred by the statute of limitations.
[8] Because the Equal Protection Clauses of the Federal and New York State Constitutions are coextensive, the Second Circuit Court of Appeals has analyzed claims of equal protection clause violations under federal and state law under the federal standard. See Town of Southold v. Town of E. Hampton, 477 F.3d 38, 53 n.3 (2d Cir. 2007); Pinnacle Nursing Home v. Axelrod, 928 F.2d 1306, 1317 (2d Cir. 1991).

individuals categorically differently." <u>Engquist</u>, 553 U.S. at
605 (citing Equal Protection cases brought by groups such as
methadone users, teachers who complied with continuing-education
requirement and those who had not, and groups differentiated by
age in the public employment context). Because the plaintiffs'
claims are made on behalf of a group of individuals, namely,
employees of MTAHQ and MABSTOA, their claims are not barred by
<u>Engquist</u>.

To state an equal protection claim, the plaintiffs must
"plausibly allege that [they have] been intentionally treated
differently from others similarly situated and no rational basis
exists for that different treatment." <u>Progressive Credit Union
v. City of New York</u>, 889 F.3d 40, 49 (2d Cir. 2018) (citing
<u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000)).[9] The
plaintiffs must show an extremely high degree of similarity
between themselves and the persons to whom they compare
themselves, such that they are <u>prima facie</u> identical. <u>Id.</u>

---

[9] The plaintiffs in <u>Progressive</u> were a group of owners of taxicab medallion
licenses who alleged that the City of New York imposed regulations that
treated taxicabs differently from for-hire vehicles without a rational basis.
<u>See</u> 889 F.3d at 48. The Court of Appeals held the plaintiffs' claims, which
alleged equal protection violations without also alleging discrimination
based upon membership in a protected class, were commonly referred to as
"class of one" equal protection claims. <u>Id.</u> at 49-50. <u>Engquist</u> bars class of
one equal protection claims against public employers that are brought by
individuals and allows such claims that are brought by groups. <u>See</u> 553 U.S.
at 605. <u>Progressive</u> establishes that the standard that must be met to bring
equal protection claims against defendants under a rational basis theory is
the same for both a single plaintiff and a group of plaintiffs. <u>See</u> 889 F.3d
at 49. Accordingly, the Court applies <u>Progressive</u>'s standard to equal
protection claims brought by groups of individuals against public employers.

> The existence of highly similar circumstances
> can then provide an inference that the
> difference in treatment lack[s] any reasonable
> nexus with a legitimate governmental policy.
> . . . Overall, to succeed on a class-of-one
> claim, a plaintiff must establish that (i) no
> rational person could regard the circumstances
> of the plaintiff to differ from those of a
> comparator to a degree that would justify the
> differential treatment on the basis of a
> legitimate government policy; and (ii) the
> similarity in circumstances and difference in
> treatment are sufficient to exclude the
> possibility that the defendants acted on the
> basis of a mistake.

Id. (internal quotation marks and citations omitted).

The plaintiffs fail to meet the exacting standards required to show that they are similarly situated to employees of NYCTA. In paragraph 216 of the complaint, the plaintiffs admit that some plaintiffs received overtime pay in 2017 or 2018 as a result of collective bargaining carried out by their unions. The Court may take collective bargaining agreements into consideration in deciding this motion to dismiss, because the plaintiffs relied on the results of union negotiations and were aware of their own history of union representation when they filed their complaint. In addition, the Court may take judicial notice of collective bargaining agreements, which are public documents, promulgated by or binding on a government agency, and not subject to reasonable dispute. See Richardson v. New York City Bd. of Educ., 711 F. App'x 11, 13-14 (2d Cir. 2017) (taking

judicial notice of collective bargaining agreements between the New York City Board of Education and the teachers' union).

MABSTOA entered into two relevant collective bargaining agreements: the first with a union for employees who held positions including Computer Aide, Computer Associate, Computer Specialist, and Telecommunications Associate, Hurd Decl. Ex. 1, and the second with a union for employees who held positions including Staff Analyst Trainee, Staff Analyst, Associate Staff Analyst, and Assistant Transit Management Analyst, Hurd Decl. Ex. 3. These positions are the same as the positions that the plaintiffs state they currently hold with MABSTOA. The first agreement negotiated wage increases in 2016 and 2017. Hurd Decl. Ex. 1 at 10, Ex. 2 at 1. The second agreement negotiated wage increases in 2018. Hurd Decl. Ex. 3 at 10. Separate collective bargaining agreements that apply to employees with similar positions at the NYCTA existed from at least 1999, Hurd Decl. Ex. 6A, and 2005, Hurd Decl. Ex. 5. A rational person could believe that the salary ranges of MABSTOA employees and NYCTA employees differ because the employees of MABSTOA and of NYCTA were subject to two separate collective bargaining agreements. See Danese v. Knox, 827 F. Supp. 185, 196 (S.D.N.Y. 1993) (granting motion to dismiss equal protection claim in part because proposed plaintiffs were subject to contract that comparators were not); cf. Barr v. City of White Plains, 779 F.

App'x 765, 768 (2d Cir. 2019) (affirming district court judgment that retired employees were not similarly situated to active employees who were subject to collective bargaining agreement).

The plaintiffs also cannot show that no rational basis exists for the differences in salary ranges. NYCTA employees unionized earlier than MABSTOA employees and therefore have a longer history of negotiations. The fact that separate collective bargaining agreements exist and that there is a difference in the history of union negotiations provides a rational basis for why the defendants paid employees at MABSTOA and NYCTA differently. Moreover, disagreements regarding the wages that plaintiffs in MABSTOA and MTAHQ receive, compared to the wages that employees of NYCTA receive, are matters better resolved between the plaintiffs' unions and the defendants in the collective bargaining process, rather than in the federal courts. See Short v. Mary, 617 Fed. App'x 410, 414 (6th Cir. 2015). Accordingly, the plaintiffs' equal protection claims are **dismissed**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The defendants' motion to dismiss the plaintiffs' claims of overtime violations under the FLSA, NYCSL, and NYCRR is **granted**; the FLSA claims are **dismissed**

18

**without prejudice** and the NYCSL and NYCRR claims are **dismissed with prejudice.** The defendants' motion to dismiss the plaintiffs' claims under the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and New York State Constitution is **granted** and those claims are **dismissed without prejudice.**

The Clerk is directed to close all pending motions and to close the case. If the plaintiffs seek to file an amended complaint, they should bring an appropriate motion that includes a copy of the proposed amended complaint.

**SO ORDERED.**

**Dated:    New York, New York
           March 12, 2020**

                              /s/ John G. Koeltl
                                  **John G. Koeltl
                         United States District Judge**